1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    DWAYNE HARRIS,                              Case No.: 15cv2442-MMA-JLB

12                               Plaintiff,
                                                  **ORDER GRANTING DEFENDANT O.**
13    v.                                          **SHELLAND'S MOTION FOR**
                                                  **SUMMARY JUDGMENT**
14    O. SHELLAND, et al.,

15                               Defendants.       [Doc. No. 29]

16

17

18

19

20

21

22

23          Plaintiff Dwayne Harris, a state prisoner proceeding *pro se*, commenced this civil

24    rights action under 42 U.S.C. § 1983, alleging violations of his First, Eighth, and

25    Fourteenth Amendment rights while incarcerated at Richard J. Donovan Correctional

26    Facility ("RJD") in San Diego, California.  *See* Doc. No. 1.[1]  Plaintiff's unverified

27    _____

28          [1] Citations refer to the pagination assigned by the CM/ECF system.

1

complaint sets forth four causes of action against Defendant O. Shelland and three
unnamed defendants, Does 1-3, for violations of his constitutional rights.[2]  *Id.*  Defendant
Shelland, a Culinary Officer at RJD in the Facility where Plaintiff was housed, moves for
summary judgment as to all claims against him.  *See* Doc. No. 34-1.

　　　After the Court's initial review, two causes of action remain viable: (1) deliberate
indifference to serious medical needs and excessive use of force in violation of the Eighth
Amendment against Defendant Shelland; and (2) racial harassment and intimidation in
violation of the Equal Protection Clause of the Fourteenth Amendment against Defendant
Shelland.  For the reasons set forth below, the Court **GRANTS** Defendant Shelland's
motion for summary judgment.

**BACKGROUND**

*1. Plaintiff's Version of Facts as Set Forth in Unverified Complaint*

　　　Plaintiff alleges that on January 22, 2015, at approximately 7:00 a.m., Defendant
Shelland closely followed him towards the exit of the RJD Facility "A" dining hall after
he picked up his special medical diet lunch.  Defendant Shelland approached Plaintiff and
grabbed his upper left arm at the location where Plaintiff had a surgically implanted
arterio-venous ("AV") graft and dialysis shunt.  In an angry manner, he then asked why

---

[2] Generally, "Doe" pleading is disfavored.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
1980).  A plaintiff must identify parties by their true names and substitute those individual persons by
amending the complaint before the United States Marshal is able to execute service upon him or her.
*See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified
and served within 120 days of the commencement of the action against them); FED. R. CIV. P.
15(c)(1)(C) & 4(m).  Ninth Circuit authority provides that the plaintiff be given an opportunity to pursue
appropriate discovery to identify the unknown Does, unless it is clear that discovery would not uncover
their identities, or that his Complaint should be dismissed for other reasons.  *See Wakefield v. Thompson*,
177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

　　　In this case, it may be possible to identify Doe #1.  However, Plaintiff did not amend his
complaint naming any of the Doe Defendants, nor indicate to the Court he made any attempt to learn
their identities.  The Doe Defendants have not been properly served with the summons and complaint in
the required ninety days under Rule 4(m), and Plaintiff has provided no evidence, sworn affidavit, or
testimony alleging or supporting any cause of action against the Doe Defendants.  For these reasons, and
the reasons set forth in this order, the Court will not consider the counts against Doe Defendants 1-3 on
the merits.

15cv2442-MMA-JLB

Plaintiff was taking two hot meals in violation of CDCR policy. While gripping his arm very tightly, Defendant Shelland swung Plaintiff around, forcing him face-first against the concrete wall in a violent manner. While holding Plaintiff against the wall, Defendant Shelland grabbed or knocked Plaintiff's special diet meal out of his hand, and smashed it with his foot. Plaintiff alleges that he repeatedly pleaded for Defendant Shelland to let go of his arm at the location of the dialysis shunt, and that Defendant Shelland not only maintained an injurious grip on his arm, but at times grabbed harder and shook his arm while saying, "Oh. This arm." Doc. No. 1 at 4. Plaintiff alleges that Defendant Shelland then proceeded to yell into his ear; making racist remarks about Plaintiff's ethnicity as an African American, including calling Plaintiff, "Boy," "Black-ass Bitch," and other racially offensive terms for at least two minutes. *Id.* at 3.

Plaintiff further alleges that the first time he received dialysis following this incident medical staff informed him something was wrong with his dialysis shunt, which caused profuse bleeding when the dialysis needle was removed. Plaintiff claims he was scheduled for emergency surgery in order to correct the damage to the shunt on January 23, 2015. On January 26, 2015, Plaintiff claims he was transported back to Alvarado hospital to have the malfunctioning shunt completely replaced.[3]

2. *Undisputed Material Facts*[4]

In or about 2003, Plaintiff was diagnosed with kidney failure. In November 2012, Plaintiff received an autologous AV fistula device inserted into his left arm to allow him

---

[3] Plaintiff's medical records do not support this factual timeline. In his declaration, Dr. Thomas F. Amato completed a comprehensive review of Plaintiff's medical files from CDCR, Alvarado Hospital, and DaVita Health. Doc. 29-4 at 2. Dr. Amato testified that Plaintiff appeared for his regularly scheduled dialysis treatments on three separate occasions following the incident with Defendant Shelland. *Id.* at 3. A report was prepared by DaVita staff on each occasion indicating the AV graft was functioning well. *Id.*

[4] These undisputed material facts are taken from Plaintiff's video recorded testimony included in the Declaration of Lt. H. Asbury; Plaintiff's Deposition Testimony included in the Declaration of Andrew M. Gibson; Defendant's Separate Statement of Uncontroverted Facts; Defendant's Declaration in support of his Motion for Summary Judgment; and the Declaration of Dr. Thomas F. Amato. *See* Doc. 29. Where a material fact is in dispute, it will be so noted.

to receive dialysis treatments three times a week.  Clots formed on the AV fistula on at least three occasions before physicians implanted a fully synthetic AV graft into Plaintiff's left arm on July 22, 2014.  Clots also formed on the synthetic AV graft in January 2015 and March 2016.

On January 22, 2015, the date of the incident giving rise to this action, Defendant Shelland was supervising inmates entering and exiting the dining hall.  At approximately 7:00 a.m., Plaintiff went to RJD's "A" Facility dining hall to eat breakfast.  Prior to entering the hall, Plaintiff picked up his regular meal of hot food, as well as a special diet meal, which consisted of a brown paper bag and a second hot tray of food.  Inmates are permitted only one hot tray of food per meal service unless they receive a doctor's approval, in the form of a medical chrono, to receive a special diet.

Defendant Shelland stopped and questioned Plaintiff after seeing he had two hot trays.  Plaintiff informed Defendant Shelland he had a medical chrono allowing him the two meals.  Defendant Shelland requested to see the chrono and Plaintiff handed him both a handwritten, and an expired type-written chrono.  Defendant Shelland contacted the medical department at RJD to verify the handwritten chrono, and was informed that Plaintiff's chrono had expired.  Defendant Shelland then told Plaintiff he could not have the second tray of food.

Defendant Shelland either took or knocked the tray of food from Plaintiff and stepped on it prior to ordering him to submit to a routine pat-down search.  Plaintiff did not resist or speak to Defendant Shelland as he complied with the search.  After the search, Defendant Shelland ordered Plaintiff to leave the area, and Plaintiff went to the program office to inform the sergeant about the incident as well as request an additional meal.  Plaintiff completed a written statement soon after the events occurred and, pursuant to CDCR policy, participated in a video recorded interview regarding his complaint later the same day.

Approximately two hours after the incident, Plaintiff underwent a physical examination by a Licensed Vocational Nurse ("LVN").  The LVN did not make note of

4

15cv2442-MMA-JLB

any observable injury or indicate that Plaintiff mentioned experiencing any pain or injury apart from stating that "[Defendant Shelland] grabbed [his] left arm." Doc. 29-6 at 2. Plaintiff was not referred for any further medical attention. At approximately 12:05 p.m. the same day, Plaintiff was seen by his primary care physician for a previously scheduled, unrelated appointment. The doctor prepared a detailed medical report and renewed Plaintiff's chrono. The doctor made no notation of injury to Plaintiff's upper left arm or complaint of pain.

According to Plaintiff's medical records, he appeared for his regularly scheduled dialysis treatments at DaVita Health Care on January 23, 26, and 28, 2015. DaVita staff made no mention of problems with Plaintiff's AV graft in their reports. On January 30, 2015, a DaVita staff member noted that Plaintiff's AV graft clotted. Plaintiff was transferred immediately to Alvarado Hospital to declot the graft. The attending physician reported that Plaintiff's AV graft suffered from high-grade stenosis (narrowing) at the connection between the graft and the vein. After the declotting procedure, Plaintiff returned to DaVita to complete his dialysis treatment.[5]

## DEFENDANT'S MOTION

Defendant Shelland moves for summary judgment, arguing there is no genuine issue of material fact as to Plaintiff's Eighth Amendment claims of deliberate indifference to Plaintiff's serious medical needs and use of excessive force. In addition, Defendant Shelland argues Plaintiff's Fourteenth Amendment Equal Protection claim fails as a matter of law. Consequently, Defendant Shelland contends he is entitled to summary judgment as to all claims.

### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court

---

[5] Dr. Amato testified there was no evidence in Plaintiff's medical records that his dialysis shunt was ever replaced despite Plaintiff's allegation in his unverified Complaint. Doc. 29-4 at 4.

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *Id.* at 324. The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted).

In applying the standard set forth under Rule 56, district courts must "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). A court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing *pro se*] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). However, neither an unverified complaint nor unsworn statements made in the

parties' briefs can be considered as evidence at this stage.  *Moran v. Selig*, 447 F.3d 748, 759 & n. 16 (9th Cir. 2006) (unverified complaint cannot be considered as evidence on motion for summary judgment).

The Local Civil Rules for the Southern District of California permit a district court to construe an opposing party's failure to file its opposition papers as consent to the granting of summary judgment for the opposing party on its merits.  S.D. CAL. CIVLR 7.1(f)(3)(c).  The Ninth Circuit has qualified this rule, however, by holding that "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).  Summary judgment must therefore be decided on the merits, and it "must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

However, in deciding whether to grant summary judgment, the court will not undertake the task of formulating arguments on behalf of a plaintiff who has abdicated his responsibility to defend himself against a defendant's motion for summary judgment. A *pro se* litigant, like the plaintiff in the case at bar, must assume the responsibility of presenting his own legal theories and arguments; he cannot rely on the court to do so on his behalf.  Thus, when a motion is unopposed as it is here, the Court will make its determination based solely on the facts, law, and arguments that have been presented to it.

### 2. Eighth Amendment Claims

#### a) Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. *Id.* A prison official is deliberately indifferent whenever the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d

1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotation marks omitted). The prison official "must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (quotations and citations omitted). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* at 837. "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Thus, in order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992).

It is undisputed that Plaintiff was diagnosed with kidney failure in or about 2003 and that he has a fully synthetic AV graft dialysis shunt inserted in his upper left arm for his weekly dialysis treatments. It is also undisputed that Plaintiff and Defendant Shelland did not know each other and had never spoken more than a passing greeting to each other before the incident giving rise to this action. It may be true that Defendant Shelland knew or reasonably should have known generally that Plaintiff had some medical condition after he confirmed with CDCR medical staff that Plaintiff at one time had a medical chrono. However, Defendant Shelland testified that he had no specific knowledge of Plaintiff's dialysis shunt or its location on Plaintiff's upper left arm. Contrary to Plaintiff's allegations in his unverified complaint, Plaintiff testified during his deposition that he did not say a single word to Defendant Shelland during their interaction on January 22, 2015, much less advise him regarding the existence and location of his shunt. Doc. 29-3 at 55. Given this testimony, no reasonable jury could find that Defendant Shelland acted with the type of deliberate indifference that satisfies the legal standard of Plaintiff's Eighth Amendment Claim. As such, summary judgment in Defendant Shelland's favor is appropriate.

b) <u>Excessive Force</u>

The use of excessive force by a prison official violates the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992). However, the use of force does not run afoul of the Constitution if "[the] force was used in a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (per curiam). To determine whether the force applied is excessive, the court must examine: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of the forceful response; and (5) the extent of the injury suffered by the inmate. *Hudson*, 503 U.S. at 9.

It is undisputed that Defendant Shelland conducted a routine pat-down search of Plaintiff. Plaintiff testified during his deposition that everything he stated in his video recorded interview on January 22, 2015 was true. During that interview Plaintiff stated that he did not sustain any injuries during his interaction with Defendant Shelland, and that "it didn't do nothing" when Defendant Shelland grabbed his arm. Doc. 29-7 at 5. Plaintiff also stated that he didn't mean that Defendant Shelland "body slammed [him]" as described in his complaint, but that it was "protocol for [him] to get against the wall in order for [Defendant Shelland] to search [him]." *Id.* at 6. Based on Plaintiff's own sworn testimony, there is no genuine dispute of material fact regarding whether Defendant Shelland used excessive force in his routine search of Plaintiff. As such, summary judgment in Defendant Shelland's favor is appropriate.

### 3. *Fourteenth Amendment Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. A plaintiff may establish an equal protection claim by showing that he was intentionally discriminated against on the basis of his membership in a protected class. *Flores v. Morgan Hill Unified School Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). Verbal

15cv2442-MMA-JLB

harassment is insufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Plaintiff alleges in his unverified complaint that Defendant Shelland used racially offensive and derogatory language towards African Americans. Defendant Shelland alludes to this language by citing Plaintiff's deposition, as well as the unverified complaint. However, neither Defendant Shelland nor Plaintiff provide the relevant pages of deposition testimony cited in Defendant's briefing. Despite this failure to provide relevant testimony, the alleged use of vulgarity does not rise to the level of a constitutional violation under the applicable law, and Plaintiff has not provided any further evidence to support an Equal Protection claim. As such, summary judgment in Defendant Shelland's favor is appropriate.[6]

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Shelland's motion for summary judgment as to all remaining claims in this action. The Clerk of Court is instructed to enter judgment accordingly, and close the case.

**IT IS SO ORDERED**.

DATE: June 9, 2017

HON. MICHAEL M. ANELLO
United States District Judge

---

[6] The Court notes that Defendant Shelland raised an additional defense of qualified immunity. Because no constitutional violation was found, the Court will not review the merits of this defense.